UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JASON SETH PERRY,                          )
                                           )
                    Plaintiff,             )
                                           )
              v.                           )        No. 2:19-cv-00237-JMS-MJD
                                           )
K. STATON, et al.                          )
                                           )
                    Defendants.            )

**Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment,
Granting in Part and Denying in Part Defendants' Cross-Motions for Summary Judgment,
and Directing Entry of Final Judgment**

Plaintiff Jason Perry, an inmate of the Indiana Department of Correction ("IDOC"), alleges that the defendants violated his Eighth and Fourteenth Amendment rights when they placed him on Department-wide Disciplinary Restricted Status Housing ("DWRH-D"), failed to properly conduct his annual review hearing, and did not allow him to participate in certain prison rehabilitation programs. Mr. Perry also contends that the defendants' actions were taken in retaliation for his filing of several lawsuits against various IDOC employees. Mr. Perry and the defendants[1] seek summary judgment on these claims. For the following reasons, Mr. Perry's motion for summary judgment is granted in part and denied in part and the defendants' cross-motions for summary judgment are granted in part and denied in part.

---

[1] In the motion for summary judgment, Mr. Perry states, "Plaintiff's claims rest mostly on defendants Jerry Snyder, Charles Dugan, Michael Osburn, Jack Hendrix, and Kamma Staton." Dkt. 101, p. 19. Further, he does not specifically discuss claims against any of the other named defendants in his briefing. Accordingly, the Court considers Mr. Perry to have withdrawn his claims against the defendants other than those identified in his brief in support of his motion for summary judgment.

## I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir.

2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II. Motion to Strike

Mr. Perry moves to strike certain exhibits to the defendants' motions for summary judgment. Specifically, Mr. Perry moves to strike the document titled "Actions, Consequences, and Treatment (ACT) Program," Dkt. 103-13, and the declaration of Jerry Snyder, dkt. 103-19. Mr. Perry asserts that these documents cannot be used in support of the defendants' motions for summary judgment because they were not properly disclosed to him in discovery and cannot be authenticated.

Rule 37 of the Federal Rules of Civil Procedure states that if a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When deciding whether evidence should be excluded, the Court considers "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

First, the ACT Program document was properly authenticated pursuant to Rule 901 of the Federal Rules of Evidence. Rule 901 requires a proponent of evidence to produce evidence

sufficient to support a finding that the item is what the proponent claims it is. Rule 901(a). This can be done with sworn testimony of a person with knowledge regarding the document. Rule 901(b)(1). The defendants properly authenticated the document at issue through Mr. Snyder's testimony. Dkt. 103-19, ¶ 6.

Next, Mr. Perry argues that the document was not provided to him as part of the defendants' initial disclosures. The defendants explain that, in the operative complaint, Mr. Perry did not allege that he was denied the opportunity to participate in prison programs and that they first learned of his intention to pursue such a claim during his deposition on August 4, 2020, and later in his motion for summary judgment. The defendants then included the document in their cross motion for summary judgment. While Mr. Perry contends that he did state retaliation claims in his Second Amended Complaint, the allegations in that pleading do not refer to the ACT Program.[2] *See* dkt. 49. Mr. Perry also contends that he filed multiple motions to compel, which should have given the defendants' the opportunity to "look at discovery" and that he submitted interrogatories to Mr. Snyder regarding his job duties and that he should have provided the ACT Program document in response to these interrogatories. But Mr. Perry has pointed to no discovery request or discussion in which he notified the defendants that his claims relied in part on the ACT Program. The Court therefore finds no bad faith or willfulness on the part of the defendants in failing to produce the ACT Program document until after Mr. Perry had referred to the program specifically as part of the basis of his retaliation claim. Accordingly, the motion to strike, dkt. [113], is **denied**.

---

[2] Mr. Perry also asserts that the defendants failed to timely mail their response to the motion to strike to him. He states that they mailed it to him on October 30, 2020, stating that the response was returned to them "due to a clerical mistake." Dkt. 131. There is no reason to believe this assertion by the defendants is false. And, in any event, the Court has considered Mr. Perry's reply in support of the motion to strike. Mr. Perry also challenges the docketing of certain of his submissions to the Court. Mr. Perry is informed that, in considering the pending motions for summary judgment, the Court will carefully review all of the applicable filings.

### III. Facts

The following statement of facts has been evaluated pursuant to the standards set forth above. The facts are considered to be undisputed except to the extent that disputes are noted.

A. *Mr. Perry's Transfer*

Mr. Perry arrived at New Castle Correctional Facility ("NCCF") on January 10, 2018. Dkt. 103-3.

In May of 2018, Keith Butts, the Warden of NCCF, recommended that Mr. Perry be transferred to another facility and placed in Department-Wide Administrative Restricted Status Housing ("DWRH-A").[3] Dkt. 103-3; dkt. 103-4. Warden Butts's recommendation was forwarded to Michael Osburn, the Director of Operations for IDOC at that time, for his approval. *See* dkt. 103-4.

On June 27, 2018, Mr. Perry was approved for transfer to DWRH-A. Dkt. 101-1, p. 5. That same day, Mr. Perry was sanctioned with a total of nine months in Department-Wide Disciplinary Restricted Status Housing ("DWRH-D")[4] after he was found guilty of threating and assaulting another offender with bodily fluids. Dkt. 103-5, p. 1; dkt. 101-1, p. 9; dkt. 103-1, p. 10:7-12.[5]

---

[3] Department-Wide Administrative Restricted Status Housing (DWRH-A) is a housing designation given to an offender who demonstrates a pattern of dangerous behavior which requires enhanced security measures and isolation from other offenders. At all times relevant to Plaintiff's Complaint, three IDOC facilities were equipped to house offenders assigned to DWRH-A – Wabash Valley Correctional Facility, Westville Correctional Facility, and Pendleton Correctional Facility.

[4] Department-Wide Disciplinary Restricted Housing (DWRH-D) is a housing designation given to an offender who is found guilty of violating the IDOC Disciplinary Code of Adult Offenders. Individual offenders who are found guilty of certain conduct violations may be placed on DWRH-D for a certain period of time as punishment for violating prison rules. At all times relevant to this Complaint, two IDOC facilities were equipped to house offenders assigned to DWRH-D – Wabash Valley Correctional Facility and Westville Correctional Facility.

[5] References to Mr. Perry's deposition are to the deposition page, not the page number in CM/ECF.

On July 13, 2018, Mr. Osburn, then the Director of Classification for IDOC, approved Mr. Perry's transfer from NCCF to Wabash Valley Correctional Facility ("WVCF"). Dkt. 103-4. When approving Mr. Perry's transfer, Mr. Osburn noted that Mr. Perry had been sanctioned with time on DWRH-D and approved his transfer to either WVCF or Westville Correctional Facility (WCU). *Id.* Mr. Osburn testifies that Mr. Perry's receipt of disciplinary sanctions was the sole reason that he approved Mr. Perry's transfer and noted his placement on DWRH-D. Dkt. 109-5, ¶ 8-9. After his transfer was approved, Mr. Perry was held in segregation at NCCF until December 20, 2018, when he was transferred to WVCF. Dkt. 103-1 at 12:18-23. Once at WVCF, Case Manager Charles Dugan notified Mr. Perry that he was being placed in the Secured Confinement Unit (SCU) to serve his remaining time on DWRH-D. Dkt. 103-18, ¶ 5.

B. *Mr. Perry's First Classification Appeal*

On December 26, 2018, Mr. Perry appealed Mr. Dugan's decision to keep him on DWRH-D. Dkt. 103-6, p. 2. In his appeal, Mr. Perry asserted that, although he had been sentenced to nine-months in DWRH-D, he had actually been "reclassed" to DWRH-A by staff at NCCF on that same day. Dkt. 103-6, p. 2; Dkt. 103-16, ¶ 2. After reviewing Mr. Perry's classification appeal, Defendant Jack Hendrix, Director of Classification for IDOC, determined that Mr. Perry was appropriately placed and denied his appeal. Dkt. 103-6, p. 1; dkt. 103-16, p. ¶¶ 4-6. Mr. Perry finished serving his time on DWRH-D on or around March 6, 2019. Dkt. 103-18, p.  ¶ 6. After Mr. Perry was released from DWRH-D on March 6, 2019, he was reclassified to DWRH-A. Dkt. 103-8; dkt. 103-18, ¶ 9.

C. *Mr. Perry's Second Classification Appeal*

On March 15, 2019, Mr. Perry appealed the decision to place him on DWRH-A. IDOC Release Specialist, Kamma Staton reviewed Mr. Perry's appeal. Dkt. 103-7; dkt 103-17, ¶ 2. When

she received the appeal, Ms. Staton believed this appeal to be duplicative of the earlier appeal which Mr. Hendrix denied on or around January 11, 2019. Dkt. 103-7; dkt. 103-17, ¶ 4. On April 16, 2019, Ms. Staton responded to Mr. Perry's appeal stating that the appeal had already been reviewed and that "this appeal will not be reviewed again." Dkt. 103-7; dkt. 103-17, ¶ 5.

Since he was placed on DWRH-A in March of 2019, Mr. Perry's placement on DWRH-A was reviewed by classification staff at WVCF at least once every 30 days. Dkt. 103-18, ¶ 10. Every time Mr. Perry's housing status is reviewed, he is given a notice informing him of the staff's decision and notifying him that he may appeal the decision. Dkt. 103-18, ¶ 11.

### D. *Mr. Perry's Annual Review in April 2019*

On or around April 9, 2019, Mr. Dugan went to Mr. Perry's cell to conduct an Annual Review Hearing of his classification within IDOC. Dkt. 103-12; dkt. 103-18 ¶ 12. Mr. Perry was advised of his rights afforded to him by IDOC policy, including his right to 48-hour notification prior to the Annual Review Hearing. Dkt. 103-1, 25:21-24; dkt. 103-12; dkt. 103-18 at ¶¶ 13-14. Mr. Perry indicated that he did not waive his right to 48-hour notice of the hearing afforded to him by IDOC policy. Dkt. 103-1 at 25:24-25; dkt. 103-12; dkt. 103-18, ¶ 15. After Mr. Perry refused to waive his right to 48-hour notice, and stated he would like to present some evidence, Mr. Dugan asked him how he would like to proceed. Dkt. 103-1 at 26:2; Dkt. 103-18 at ¶ 16. Mr. Perry told Mr. Dugan that he would like to be transferred to a different prison. Dkt. 103-1 at 26:3-4; dkt. 103-18, ¶ 16. Mr. Perry also requested the opportunity to prepare for the hearing. Dkt. 103-1 at 26:5-6. In his Report of Classification Hearing, Mr. Dugan noted that Mr. Perry requested a transfer. Dkt. 103-18, ¶ 18; dkt. 103-12. Mr. Dugan also noted that Mr. Perry had two conduct reports. Dkt. 103-12. Mr. Perry's transfer request was ultimately denied. Dkt. 103-18, ¶ 18; dkt. 103-14.

E. *Mr. Perry's Inability to Participate in Prison Programs*

On December 22, 2019, Mr. Perry wrote Defendant Jerry Snyder asking to participate in the Actions, Consequences and Treatment ("ACT") Program and the "Thinking for a Change" Program. Dkt. 103-15; dkt. 103-19, ¶ 2. At that time, the "Thinking for a Change" Program was not being offered to offenders housed in the WVCF SCU. Dkt. 103-19, ¶ 3.  On December 30, 2019, Mr. Snyder responded to Mr. Perry's letter and informed him that the classes for the ACT program had not been selected yet. Dkt. 103-15; dkt. 103-19, ¶ 4. Mr. Perry was not selected to participate in the ACT program when the next classes began in February 2020. Dkt. 103-19, ¶ 5. Mr. Perry was not selected to participate in the ACT program because he did not meet the eligibility requirements for the program. *Id*. For an offender to be eligible to participate in the ACT program, he must be free of any Class A or Class B conduct violations for at least 90 days. Dkt. 103-13; dkt. 103-19, ¶ 6. Mr. Perry was found guilty of a Class B conduct violation on December 17, 2019. Dkt. 103-19, ¶ 7.

## IV. Discussion

The parties seek summary on Mr. Perry's Fourteenth Amendment due process, Eighth Amendment conditions-of-confinement, and First Amendment retaliation claims.

A. *Due Process*

The Court performs a two-step analysis when considering a procedural due process claim. *Isby v. Brown*, 865 F.3d 508, 524 (7th Cir. 2017). First, the Court must determine whether the plaintiff was deprived of a protected liberty interest. *Id.* Then the Court considers "what process was due under the circumstances." *Id.* The defendants do not dispute that Mr. Perry's time in segregation implicated a liberty interest. But the parties dispute whether Mr. Perry received

adequate due process when he was placed in segregation and at his annual review. Mr. Perry's due process claims against each defendant are discussed below.

    1. <u>Osburn</u>

Mr. Perry argues that, because Warden Butts recommended his placement on DWRH-A on June 13, 2018, and he was approved to be transferred to DWRH-A, Mr. Osburn violated IDOC policy when he approved the transfer to DWRH-D. Mr. Perry also argues that Mr. Osburn violated his due process rights by delaying in issuing a transfer authority form.

A violation of policy does not amount to a due process violation. *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [and are] not designed to confer rights on inmates."). Here, it is undisputed that Mr. Perry was sentenced to nine-months disciplinary segregation as the result of two conduct reports. Mr. Perry does not argue that he was denied due process during his disciplinary hearing. Thus, even if his assignment to DWRH-D on the report of inter-institutional transfer form violated IDOC policy, he has shown no constitutional due process violation. *Cf. Keller v. Donahue*, 271 Fed. Appx. 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 Fed. Appx. 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief."). The same is true of Mr. Perry's claim that Mr. Osburn failed to issue a transfer form. Mr. Perry has no due process right to be transferred to any particular prison. *See Holleman v. Zatecky*, 951 F.3d 873,

881 (7th Cir. 2020) (an inmate does not have a constitutional entitlement to assignment to a particular institution).

It is undisputed that Mr. Osburn did not violate Mr. Perry's due process rights when he approved his transfer to DWRH-D or when he failed to issue a transfer authority form. Accordingly, Mr. Osburn, and not Mr. Perry, is entitled to summary judgment on Mr. Perry's due process claim.

### 2. Hendrix

Mr. Perry contends that Mr. Hendrix violated his due process rights by failing to review his classification appeal. But, because there is no due process right to an administrative appeal, any failure to review an appeal cannot form the basis of a due process claim. *Cf. Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

### 3. Staton

Mr. Perry also argues that Ms. Staton violated his due process rights when she denied his appeal and stated that "This appeal will not be reviewed again since it was already reviewed." Dkt. 103-7, p. 1. But, again, because Mr. Perry did not have a right to an appeal, Ms. Staton cannot have violated his due process rights by denying it. *Cf. Wolff*, 418 U.S. at 556. Further, Ms. Staton's letter merely informed Mr. Perry that she would not be reviewing what she understood to be a duplicative appeal again. Dkt. 103-7, p. 1. And Mr. Perry was explicitly informed of his right, pursuant to IDOC policy, to appeal subsequent classification decisions. *See* dkt. 103-10, p. 2.

### 4. Dugan

Mr. Perry contends that Mr. Dugan violated his due process rights when he failed to provide him 48-hours' notice of his classification hearing during his annual review in April 2019.

Mr. Dugan argues that, despite the lack of 48-hours' notice, Mr. Perry was still given adequate due process and, at any rate, he is entitled to qualified immunity on this claim.

When due process is implicated, the Supreme Court has held that "[p]rison officials must engage in some sort of periodic review of the confinement of [inmates in administrative segregation]." *Hewitt v. Helms*, 459 U.S. 460, 477 n. 9 (1983), *abrogated on other grounds, Sandin v. Conner*, 515 U.S. 472, 484 (1995). This means that inmates are entitled to "some 'informal, nonadversary' procedures." *Westerfer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012) (quoting *Hewitt*, 459 U.S. at 476). This includes "some notice" and enough time to "prepare adequately" for the review. *Id.*

Here, when Mr. Dugan came to Mr. Perry's cell and told him he was there for his annual review, Mr. Perry requested time to prepare. Dkt. 103-1 at 25:25-26-6. Mr. Dugan noted that Mr. Perry requested a transfer but did not honor his request for time to prepare. Instead, he apparently completed the hearing at that time. The Court concludes that this did not provide Mr. Perry due process – "some notice" or enough time to "prepare adequately" –  for the review. *Westerfer*, 682 F.3d at 684.

Mr. Dugan argues that even if he did not provide Mr. Perry adequate notice of his classification hearing, he is entitled to qualified immunity on this claim. Qualified immunity protects government officials from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). Analysis of the qualified immunity defense requires a consideration of: (1) whether the plaintiff's constitutional rights were violated and (2) whether the rights were clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). The Court has already found that Mr.

Perry was not provided adequate notice of his April 2019, annual review. Thus, Mr. Dugan is entitled to qualified immunity only if the right was not clearly established at the time.

Prison officials have been on notice since *Hewitt* that periodic reviews of administrative segregation are constitutionally required. And the *Hewitt* Court explained that the inmate must receive "some notice" and an "opportunity to present his views." 459 U.S. at 476. While the Supreme Court has "declined to establish rigid rules and instead [has] embraced a framework to evaluate the sufficiency of particular procedures," *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005), the Court has explained that "[r]equiring officials to provide a brief summary of the factual basis for the classification review and allowing the inmate a rebuttal opportunity safeguards against the inmate's being mistaken for another or singled out for insufficient reason." *Id.* at 226. In other words, although the Supreme Court has not held that a prison official must provide an inmate a specific amount of time to prepare for his segregation review, it was clearly established at the time of the annual review at issue in this case that "some notice" was required. By any measure, this annual review did not provide "some notice." Mr. Dugan is therefore not entitled to qualified immunity on this claim.

It is undisputed that Mr. Dugan violated Mr. Perry's due process rights in the course of his annual review.[6] Mr. Perry is therefore entitled to summary judgment on this claim. The Court finds, however, that Mr. Perry has not demonstrated that he suffered any injury from this due process violation. While he states that he requested more time to prepare for this review, he does

---

[6] Mr. Perry also challenges some of the 30-day reviews he received while in DWRH-A. But, even liberally construing the Second Amended Complaint, dkt. 49, the Court finds that that pleading does not "contain sufficient factual matter, accepted as true, to state a claim for relief" related to the 30-day reviews. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the Court did not identify a claim based on the 30-day reviews in the order screening the Second Amended Complaint, dkt 48, and no such claim will be addressed in this Order.

not submit the evidence or argument that he would have presented if he had been given sufficient notice. He further does not dispute that he was kept in segregation because of recent conduct reports. "Because the right to procedural due process is 'absolute' in the sense that it does not depend on the merits of a claimant's substantive assertions...the denial of due process [is] actionable for nominal damages without proof of actual injury." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). Therefore, Mr. Perry is entitled to nominal damages of one dollar. *See Id.*

     5. Snyder

Mr. Perry argues that Mr. Snyder denied his due process rights by refusing to place him in rehabilitative programs, which, if Mr. Perry had completed, may have resulted in his release from segregation. But the Constitution does not provide a liberty interest in participation in rehabilitative programs. *Zimmerman v. Tribble*, 226, F.3d 568, 571 (7th Cir. 2000); *see also Higgason v. Farley*, 83 F.3d 807, 809-810 (7th Cir. 1996) (the denial of access to educational programs does not infringe on a protected liberty interest, even if denied the opportunity to earn good time credits); *Garza v. Miller*, 688 F.2d 480, 485-86 (7th Cir. 1982) (there is no constitutional mandate that prisons must provide rehabilitative programs). Without a protected liberty interest, no due process claim is available. *See Isby*, 865 F.3d at 524. Mr. Snyder is therefore entitled to summary judgment on Mr. Perry's due process claim.

    B. *Retaliation*

Mr. Perry next contends that the defendants retaliated against him through their actions. To prevail on a First Amendment retaliation claim, Mr. Perry must show that "(1) []he engaged in activity protected by the First Amendment; (2) []he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity []he engaged in was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (internal

citations omitted). The defendants do not dispute that Mr. Perry participated in protected First Amendment activity through his grievances and lawsuits against prison officials. But the parties do dispute the other elements of Mr. Perry's retaliation claims as discussed below.

### 1. Osburn

Mr. Osburn argues that Mr. Perry's retaliation claim against him fails the second element of a retaliation claim because Mr. Perry's transfer to DWRH-D instead of DWRH-A was not a deprivation likely to deter First Amendment activity and fails the third element of retaliation because there is no evidence of retaliatory animus on his part. Mr. Perry argues that he did suffer a deprivation likely to deter First Amendment activity because the conditions on DWRH-D are more restrictive than DWRH-A and because the designation to DWRH-D limited the facilities to which he could be transferred.

Even if the difference in conditions between DWRH-D and DWRH-A create a deprivation likely to deter First Amendment activity, Mr. Perry cannot show that Mr. Osburn was motivated by retaliatory animus. To make his retaliation claim, Mr. Perry must show that his "protected activity was 'at least a motivating factor' for the retaliatory action." *Thomas v. Anderson*, 921 F.3d 971, 976 (7th Cir. 2018) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015)). If the plaintiff makes this prima facie case of retaliation, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013) (citation omitted). If the defendants meet their burden of establishing a non-retaliatory motive for the allegedly retaliatory action, the plaintiff "then must persuade a fact-finder that the defendants' proffered reasons were pretextual and that retaliatory animus was the real reason" for the retaliatory action. *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). This means that Mr. Perry "must produce evidence upon which a rational finder of fact would infer that

14

[the defendants'] explanations were lies." *Id.* "[T]he ultimate question is whether events would have transpired differently absent the retaliatory motive." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

Here, Mr. Osburn argues that he had a legitimate non-retaliatory reason for approving Mr. Perry's transfer as a transfer to DWRH-D – namely that Mr. Perry had been sentenced to DWRH-D in two disciplinary actions. And Mr. Perry has not presented evidence that this non-retaliatory reason is a pretext. He argues that two classification hearings showed that he was on DWRH-A – on August 8, 2018, and August 15, 2018. Dkt. 101-1, p. 7-8. But those documents state that his placement is "pending transfer." *Id.* There is no indication in those documents that his transfer to DWRH-D based on his disciplinary convictions was inappropriate or had been set aside.

In addition, to the extent that Mr. Perry also argues that Mr. Osburn retaliated against him by delaying his transfer from NCCF to WVCF, he has identified no deprivation likely to deter First Amendment activity in this action. Further, while he describes WVCF as having "the state's most notorious lock-up unit...with boxcar like cells with no windows," he has not provided any evidence regarding the difference in conditions at the two facilities to show such a deprivation. *Cf. Holleman*, 951 F.3d at 881 (no First Amendment deprivation based on a prison transfer when plaintiff did not provide enough evidence of the difference between the two prisons to allow the Court to compare them).

Accordingly, it is undisputed that Mr. Osburn did not retaliate against Mr. Perry and Mr. Osburn is entitled to summary judgment on Mr. Perry's retaliation claim.

2. <u>Hendrix</u>

Mr. Perry claims that Mr. Hendrix retaliated against him by denying his classification appeal. Mr. Hendrix argues that he denied Mr. Perry's classification appeal after determining that he was appropriately placed. It is undisputed that, on December 26, 2018, Mr. Perry appealed Mr. Dugan's decision to keep him on DWRH-D. Dkt. 103-6, p. 2. In his appeal, Mr. Perry asserted that, although he had been sentenced to nine-months in DWRH-D, he had actually been "reclassed" to DWRH-A by staff at NCCF on that same day. Dkt. 103-6, p. 2; Dkt. 103-16, ¶ 2. After reviewing Mr. Perry's classification appeal, Mr. Hendrix determined that Mr. Perry was appropriately placed and denied his appeal. Dkt. 103-6, p. 1; dkt. 103-16, p. ¶¶ 4-6. Mr. Perry finished serving his time on DWRH-D on or around March 6, 2019. Dkt. 103-18, p.  ¶ 6. After Mr. Perry was released from DWRH-D on March 6, 2019, he was reclassified to DWRH-A. Dkt. 103-8; dkt. 103-18, ¶ 9. While Mr. Perry contends that he had been "reclassed" to DWRUH-A, it is undisputed that he had been sanctioned with nine-months disciplinary segregation on two conduct reports. In other words, Mr. Hendrix has presented a non-retaliatory reason for denying Mr. Perry's classification appeal. Mr. Perry has presented no evidence that would lead a reasonable jury to conclude that Mr. Hendrix's stated reason is a pretext. Mr. Hendrix is therefore entitled to summary judgment on Mr. Perry's retaliation claim.

3. <u>Staton</u>

Ms. Staton argues that she had a non-retaliatory motive in denying Mr. Perry's second classification appeal because she believed it to be duplicative of his previous appeal. In fact, that is what her response to his appeal stated: "This appeal will not be reviewed again since it was already reviewed." Dkt. 103-5. In addition, Mr. Perry was informed of his right, pursuant to IDOC policy, to appeal subsequent classification decisions. Mr. Perry has presented no evidence that

would lead a trier of fact to conclude that this reason is pretext. Accordingly, Ms. Staton is entitled to summary judgment on Mr. Perry's retaliation claim.

### 4. Dugan

Mr. Perry claims that Mr. Dugan's failure to provide him with 48-hours' notice of his annual review, as required by IDOC policy was the result of retaliation against him. Mr. Dugan argues that Mr. Perry did not suffer a deprivation that would deter a person of ordinary firmness from participating in First Amendment activity and that retaliatory animus was not the motive for his actions.

Here, the Court agrees that Mr. Perry has failed to explain how the lack of notice is the kind of deprivation that would deter a person of ordinary firmness from engaging in protected speech. *Cf. Holleman*, 951 F.3d at 880. Further, Mr. Perry has not shown that his protected speech was "at least a motivating factor" in Mr. Dugan's failure to provide 48-hour notice of the classification hearing. *Id.* The timing of the alleged deprivation in relation to the protected speech is not enough to establish retaliatory animus. *See McKinley v. Schoenbeck*, 731 Fed. Appx. 511, 515 (7th Cir. 2018). Here, the parties appear to agree that Mr. Perry's filing of grievances and lawsuits occurred before the classification hearing, but there is no other evidence connecting Mr. Perry's litigation efforts with Mr. Dugan's actions.[7]

Accordingly, Mr. Dugan is entitled to summary judgment on Mr. Perry's retaliation claim.

---

[7] Mr. Perry also argues that Mr. Dugan placed him in a "camera cell" out of retaliation, but Mr. Perry did not state enough facts in his second amended complaint to allege such a claim and he does not develop that claim in his voluminous briefing. There is therefore no evidence that Mr. Perry's placement in a "camera cell" was the type of action that would deter a person of ordinary firmness from participating in First Amendment activity or that such placement was the result of retaliatory animus on Mr. Dugan's part.

5. <u>Snyder</u>

Finally, Mr. Perry claims that Mr. Snyder's denial of his request to participate in the ACT program or the Thinking for a Change Program was done in retaliation for Mr. Perry's filing federal lawsuits.

Mr. Snyder explains that the Thinking for a Change Program was not offered to offenders in the SCU at WVCF. Dkt. 103-19, ¶ 4. Further, Mr. Snyder asserts that Mr. Perry was not selected to participate in the ACT program because he did not meet the criteria for participating in the program. Dkt. 103-14, dkt. 103-19, ¶ 6. To qualify for the ACT program, a prisoner "must have been free of any findings of guilt for a Major (Class A or Class B) disciplinary code violation for at least three (3) months." Dkt. 103-19, ¶ 6-7; dkt. 103-13. The class for the ACT program was selected in February 2020. Mr. Perry argues that he had a conduct report on November 14, 2019, and therefore could have been clear to participate in the ACT program by February 12, 2020. Mr. Snyder points out, however, that Mr. Perry was found guilty of the conduct violation on December 17, 2019, less than three months before the class for the ACT program was selected.

Mr. Snyder has thus provided non-retaliatory reasons for not including Mr. Perry in these programs and Mr. Perry has failed to rebut it. Accordingly, Mr. Snyder is entitled to summary judgment on Mr. Perry's retaliation claims.

C. *Conditions*

The Court also identified an Eighth Amendment conditions of confinement claim when it screened Mr. Perry's second amended complaint.

> In cases involving the conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's prohibition against cruel and unusual punishment: first, an objective showing that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety— and second, a subjective showing of a defendant's culpable state of mind.

18

*Isby*, 856 F.3d at 521 (internal citations and quotation omitted).

"[P]rolonged confinement in administrative segregation may constitute a violation of the Eighth Amendment ... depending on the duration and nature of the segregation and whether there were feasible alternatives to that confinement." *Id.* citing (*Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012)).

At summary judgment, the only condition Mr. Perry alleges violates his Eighth Amendment rights is the inability to participate in rehabilitative programs. Dkt. 101, p. 22; dkt. 103-1, p. 33:8-20. Mr. Perry argues that denying his participation in the ACT and Thinking for a Change programs violated his rights by preventing him from pursuing release from administrative segregation. Mr. Perry again compares his situation to that of the plaintiff in *Isby*. The *Isby* court recognized, "[o]bviously influencing whether prolonged segregation constitutes cruel and unusual punishment is the existence of feasible alternatives." *Isby*, 856 F.3d at 523 (quoting *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987)). But the court found that because the plaintiff, who had no major conduct violations for several years, had refused to participate in prison programming, he could not succeed on his Eighth Amendment claim. *Id.* Here, while Mr. Perry did not refuse to participate in the ACT program, as previously discussed, he had not met the criteria for admission into that program. He has not shown that the requirement that he not have any major conduct violations made the ACT program an unreasonable alternative to segregation. He has therefore failed to show that his Eighth Amendment rights were violated by the alleged lack of a feasible alternative and the defendants are entitled to summary judgment on his Eighth Amendment claim.[8]

---

[8] Mr. Perry also argues that the failure to provide him with a case plan prevented him from being able to participate in rehabilitative programs. Dkt. 114, p. 15-16. But, other than the Thinking for

## V. Motion for Sanctions

As a final matter, Mr. Perry seeks sanctions against the defendants alleging numerous violations of Rule 11 of the Federal Rules of Civil Procedure in their cross-motion for summary judgment.

Mr. Perry argues that the defendants misstated that Mr. Perry received nine months in disciplinary segregation as a fact not in dispute, did not submit the entire classification policy in support of the motion for summary judgment and misstated IDOC policy, left out evidence regarding his placement on administrative segregation, misstated Mr. Perry's deposition testimony regarding his claim that he was denied 48 hours' notice of his annual review, improperly presented the ACT program criteria document in support of their motion, and misstated Mr. Perry's eligibility for the program. Mr. Perry asks the Court to hold a sanctions hearing and consider finding the defendants to be in default.

Mr. Perry is understood to argue that the defendants misstated the record throughout their briefing. "A district court has inherent power to sanction a party who has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015). Federal Rule of Civil Procedure 11(b) provides that when an attorney signs a filing presented to the Court, the attorney certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (3) The . . . factual contentions have evidentiary support . . . ." Rule 11(c)

---

a Change and ACT programs, he does not identify a particular program he was denied. He further states that he was not given credit for an anger management program he completed. Dkt. 114, p. 18. But he explains that this credit was denied because he had been verbally and physically aggressive with mental health staff. *Id.* While he states he received no disciplinary sanction for this incident, he does not state that disciplinary sanctions are required to deny completion of a program or that he did not become aggressive. Moreover, he does not allege that any of the defendants in this case were responsible for denying him this credit.

authorizes the Court to sanction attorneys who violate this rule. Further, 28 U.S.C. § 1927 authorizes the Court to sanction an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." Sanctions are warranted under § 1927 "if the attorney has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice . . . or where a claim [is] without a plausible legal or factual basis and lacking in justification." *Lightspeed Media Corp. v. Smith*, 761 F.3d 669, 708 (7th Cir. 2014) (citation and quotation marks omitted).

Much of Mr. Perry's request for sanctions is based on the same contentions that he made in support of summary judgment – that the defendants violated IDOC policy in a number of ways, including by placing him on DWRH-D when he should have been on DWRH-A, that he was denied notice for his annual review, and that he was denied rehabilitative programming. The parties' arguments regarding Mr. Perry's classification have been discussed at length above. The defendants' arguments on these matters were not unreasonable or vexatious.

Mr. Perry also argues that the defendants misstated facts by not submitting the entire classification policy and by not fully quoting his deposition testimony. But, because Mr. Perry received the classification policy in discovery and was able to submit it, any failure by the defendants to submit the entire policy does not evince a disregard for the orderly process of justice. Similarly, because the defendants submitted Mr. Perry's entire deposition, the Court was able to review it. The defendants are, however, encouraged to submit policies in their entirety and reference all relevant deposition testimony in future filings in this Court.

Finally, Mr. Perry argues that the defendants failed to provide the ACT program document in discovery. But for the same reasons Mr. Perry's motion to strike this document was denied, *see* Part II, *supra*, the defendants are not subject to sanctions for this failure.

In short, Mr. Perry has not shown any behavior on the defendants' part in this case that supports the award of sanctions. His motion for sanctions is therefore denied.

## VI. Conclusion

As discussed above, Mr. Perry's motion to strike, dkt. [113], and motion for sanctions, dkt. [130], are **denied**.

Mr. Perry's motion for summary judgment, dkt. [100], is **denied in part and granted in part**. His motion is **granted** as to his claim that Mr. Dugan did not provide him adequate notice of his annual review. It is, in all other respects, denied.

Mr. Osburn's cross-motions for summary judgment, dkt. [109], is **granted**. The remaining defendants' cross-motion for summary judgment dkt. [103], is **granted in part and denied in part**. The motions denied as to Mr. Perry's claim that Mr. Dugan did not provide him adequate notice of his annual review. It is granted in all other respects.

The motion to supplement motion for summary judgment, dkt. [108], motion to supplement and correct brief, dkt. [123], and motion to supplement replies, dkt. [133], are **granted** only to the extent that the arguments in those filings were considered.

Judgment awarding Mr. Perry nominal damages of $1.00 on his due process claim against Mr. Dugan and dismissing all remaining claims shall now issue.

**IT IS SO ORDERED.**

Date: 1/27/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JASON SETH PERRY
138925
WABASH VALLEY - CF
WVCF - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Zachary Robert Griffin
INDIANA ATTORNEY GENERAL
zachary.griffin@atg.in.gov